UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

JOANNE UQDAH,

    Plaintiff,

vs.                                                                    COMPLAINT

CITY OF YONKERS,

    Defendant.

------------------------------------------x

05 CIV. 2952

By and through her attorney, Michael H. Sussman, plaintiff complains of defendant as follows:

I. **PARTIES**

1. Plaintiff, Joanne Uqdah, is an African-American female of legal age who resides in the City of Yonkers, within this judicial district.

2. Defendant City of Yonkers is a municipal corporation organized pursuant to the laws of the State of New York. It may sue and be sued and is covered by the provisions of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. secs. 1981 and 1981-a. Defendant employs more than twenty persons. The City of Yonkers funds a police department for which it bears juridical responsibility.

USDC SDNY
DOCUMENT
ELECTRONICALLY F:
DOC #: _____
DATE FILED: _____

-1-

## II. JURISDICTION

3. As plaintiff alleges that defendant and its agents violated rights provided under federal law, this Honorable Court hs jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331, 1343(3) & (4) and 42 U.S.C. secs. 2000e, et. seq., and 1988.

## III. FACTUAL ALLEGATIONS

4. Plaintiff has worked as a dispatcher for the City of Yonkers Police Department since October 27, 2000.

5. Commencing in late 2000, Eugene Marron, a co-worker, made repeated racially derogatory remarks to her at the workplace, calling her a "black bitch", "cotton picker" and "sugar mama" when speaking to or about her.

6. In response, plaintiff made Marron aware that this conduct was totally unacceptable.

7. Marron continued his racist comments for about two years, often making such comments in the presence of supervisory personnel, who took no action against him.

8. On January 7, 2003, while working at police headquarters and in the presence of a supervisory officer, Marron referred to plaintiff as a "nigger".

9. Again, the supervisory officer took no action against Marron.

10. After providing Marron one month to apologize to her, on February 7, 2003, plaintiff wrote Captain James Whitton informing him of what had occurred and asking for him intervention: "It is my fear that if this situation persists, it will undoubtedly confirm to other staff that it is acceptable behavior for everyone and lead to a very uncomfortable and unhealthy work environment."

11. The next day, the offending worker's brother approached plaintiff and asked what she had done to his brother.

12. After plaintiff made her report, Captain Whitton inquired [a] why she had not reported the harassment to her Lieutenant [plaintiff responded that the Lieutenant was present, witnessed the event and did nothing] and [b] whether plaintiff had reported the event to others, outside the Department [plaintiff answered affirmatively, to family and friends].

13. After plaintiff made this report to Captain Whitton, IAD questioned her but never advised her of the conclusion of its investigation or of any sanction imposed upon Marron.

14. Starting on February 27, 2003, co-workers began making negative comments to plaintiff, blaming her for causing problems by reporting the racism she encountered.

15. This hostility lasted for months, as further outlined below, and affected

plaintiff's capacity to perform her job duties.

16. During this time period, plaintiff's white co-workers began isolating her from information she needed to perform her job properly and prepared incomplete police line-up lists, failing to properly inform plaintiff of those officers on duty and affecting plaintiff's capacity to properly perform her discharge functions.

17. Plaintiff reasonably concluded that her white co-workers were trying to sabotage her job performance and became upset, anxious and distressed.

18. On June 9, 2003, two of plaintiff's co-workers illegally ran her license through the NYSPIN system.

19. Plaintiff's Lieutenant brushed aside this violation of law, telling Uqdah that the two, Dwyer and DiFalco, had run her license to determine her birthday, a quite implausible conclusion since neither had talked with plaintiff since she reported Marron's racism.

20. Again, IAD questioned plaintiff about the illegal NYSPIN search, but failed to ever advise her of the outcome of their investigation.

21. In the fall 2003, plaintiff learned that two other Yonkers' Police Department employees had run her license on NYSPIN and received minor sanctions.

22. Meanwhile, plaintiff's work environment continued to be hostile, as co-

workers complained loudly about the minor sanctions imposed on them for using NYSPIN improperly.

23. In late October 2003, plaintiff filed an EEOC complaint, claiming that defendant had discriminated against her on the basis of race. See, Exhibit 1.

24. On August 25, 2004, the EEOC issues a reasonable cause determination that defendant discriminated against plaintiff on the basis of her race. See, Exhibit 2.

25. On or about January 12, 2005, the EEOC issued plaintiff a right to sue letter. See, Exhibit 3.

26. Plaintiff herein timely files suit.

27. By and through the intentional actions and inactions of defendant, plaintiff has suffered emotional distress, anxiety about going to work, distrust of supervisory personnel at the workplace and feelings of isolation and depression.

IV. **CAUSES OF ACTION**

28. Plaintiff restates paras. 1-27 as if re-written herein.

29. By intentionally creating and condoning the creation of a hostile work environment, defendant and its agents violated Title VII of the Civil Rights Act of 1964, as amended.

30. By intentionally creating and condoning the creation of a hostile work environment, defendant and its agents violated 42 U.S.C. sec. 1981 and 42 U.S.C. sec. 1981-a.

## V. PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to hear and decide the case;

c) award to plaintiff compensatory and punitive damages as provided by law with pre and post-judgment interest;

d) permanently enjoin defendant, their agents, assigns, successors and those acting in concert with them from engaging in racially-based harassment of the plaintiff;

e) award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this action and

f) enter any other order required by the interests of justice and equity.

Respectfully submitted,

MICHAEL H. SUSSMAN (3497)

Counsel for Plaintiff

LAW OFFICES OF MICHAEL H. SUSSMAN
PO Box 1005
Goshen, New York 10924

**Dated: March 17, 2005**
      **Goshen, New York**

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*X

|  |  |
|---|---|
| IN THE MATTER OF | **COMPLAINT** |
|  | Charge No. |
| **JOANNA UGDAH** |  |
| Complainant |  |
| -v- |  |
| **THE CITY OF YONKERS, THE CITY OF YONKERS POLICE DEPARTMENT,** |  |
| Respondent. |  |



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*X

Joanna Ugdah, through her attorney, as and for her complaint, respectfully alleges as follows:

1. I am a black female and I was born on August 6, 1960. My social security number is 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.

2. I am employed by the City of Yonkers Police Department and have been so employed since October 27, 2000.

3. On January 7, 2003 at approximately 11:30 p.m. I was referred to as a "nigger" by a co-worker named P.O. Eugene Mallon in the presence of P.O. Ann Marie Dwyer and another officer. P.O. Mallon has been using racial epithets such as "black bitch", "cotton picker", and "sugar mama" when speaking to me or about me or the past two years.

4. On February 7, 2003 I wrote a memorandum to my Captain concerning P.O. Mallon's treatment of me, and I delivered to the captain on February 10, 2003.

5. On February 8, 2003 P.O. Mallon's twin brother put his face approximately two inches from mine and tried to intimidate me, by saying "what did you do to my brother"?

6. After making this complaint I was interviewed by internal officers and I was subjected to a barrage of questions such as "did I record P.O. Marron's statements", and "did I speak to anyone outside the department"?

7. Since making this complaint I have been subjected to various forms of innuendo and harassment. For example, on February 28, 2003 a co-worker stated in my presence, obviously referring to me, "who does she think she is"?, and "If she does not like it here she should leave".

8. P.O Mallon was transferred to another tour, and as far as I know no other action was taken against him.

9. I am making this complaint because my work environment has become unbearably hostile and the Yonkers Police Department did not take sufficient action to address my complaints. My co-workers are trying to sabotage my job. To date I have not received a complete report from Internal Affairs relative to my initial complaint.

10. I have been discriminated against, harassed, intimidated, subjected to ridicule, and retaliated against based upon my race.

11. I hereby designate Leonard Buddington, Jr., Esq. whose address is 30 South Broadway, Yonkers, NY as my attorney.

_____
Joanna Ugdah

Sworn to before me this 31st day of October, 2003

_____
Notary Public
Leonard Buddington, JR.
Notary Public
Qualified in New York State
Commission Expires 12/15/05
No. 02BU5000956



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Room 475
Boston, MA 02203-0506
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

EEOC Charge Number: 160-2004-00754
Ugdah v. City of Yonkers Police Department

Joanna Ugdah
42 Lennon Avenue                     Charging Party
Yonkers, NY 10701

City of Yonkers Police Department
c/o Rory A. McCormick
Associate Corporation Counsel
City of Yonkers                      Respondent
Department of Law
City Hall, Room 300
Yonkers, NY 10701-3883

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge filed under Title VII of the Civil Rights Act of 1964, as amended.

All requirements for coverage have been met. Charging Party alleged that she was discriminated against by Respondent because of her race (black), and retaliated against for reporting discriminatory employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended. More specifically, Charging Party alleges that she was subjected to racial epithets from a co-worker on a regular basis for a period of approximately 2 years. Charging Party states that on or about February 10, 2003, she delivered a memorandum to her Captain concerning the discriminatory treatment by her co-worker. Charging Party further alleges that after making her report, she was subjected to further intimidation, harassment and ridicule by her co-workers. Charging Party also states that other than transferring the alleged harasser no further action was taken against him and Respondent failed to take sufficient action to address her complaints regarding the discriminatory, harassing, and retaliatory actions of her co-workers.

Charging Party has established a prima facie case of employment discrimination under Title VII. Once a prima facie case has been established by the Charging Party in a complaint of employment discrimination, the burden of proof shifts to the Respondent in the matter to provide a non-discriminatory justification for the course of conduct it has engaged in. Respondent in this

EEOC Charge # 160-2004-00754 Ugdah v. City of Yonkers Police Department
Page 2

matter was provided with numerous opportunities to respond to the specific and exact allegations brought by Charging Party. Respondent was specifically informed that it risked an adverse determination should it not respond, and has chosen not to exercise its right to rebut Charging Party's allegations.

Inasmuch as Respondent has been afforded every opportunity to respond to the charge of discrimination and has failed to do so, the Commission at this time determines that said silence is an admission of the allegations made, and exercises its discretion to draw an adverse inference with respect to such. Accordingly, Respondent is found to have engaged in employment discrimination in violation of Title VII.

Section 706(b) of the Title VII requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Having determined that there is reasonable cause to believe that a violation has occurred against Charging Party, the Commission now invites the parties to join with it in a collective effort toward a just resolution of this matter.

If Respondent has not provided notice to this office within ten days of the date of this letter, affirming its willingness and capability of entering into the conciliation process with immediate compliance with Title VII, I will conclude that conciliation efforts have been unsuccessful and refer this matter to the United States Department of Justice for appropriate action. Any questions or discussion on the conciliation should be directed to Susan M. Boscia, who may be reached in this office at (617)-565-3213.

Disclosure of information obtained by the Commission during the conciliation process will be made in accordance with the statute, and Section 1601.26 of the Commission's procedural regulations.

If Respondent declines to enter into a conciliation discussion, or when the Commission's representative for any other reason is unable to secure a settlement acceptable to the Commission, I will so inform the parties in writing and advise them of the court enforcement alternative available to the Charging Party, aggrieved person, and the Commission.

AUG 2 5 2004

Date

On Behalf of the Commission:

Robert L. Sanders
Area Director

cc:  Leonard Buddington, Jr., Esq.
     Attorney at Law
     30 South Broadway
     Yonkers, NY 10701



**U.S. Department of Justice**

Civil Rights Division



*Employment Litigation Section - PHB*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*
*www.usdoj.gov/crt/emp/emphome.html*

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

RAA:WBF:mdw
DJ 170-57-0

JAN 1 2 2005

Joanna Ugdah
c/o c/o Michael H. Sussman, Esq.
Law Offices of Michael H. Sussman
40 Park Place
Post Office Box 1005
Goshen, NY 10924

Re: Joanna Ugdah v. City of Yonkers Police
Department, EEOC No. 160-2004-00754

Dear Ms. Ugdah:

Because you filed the above charge with the Equal Employment Opportunity Commission, and conciliation on that charge has failed, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq., against the above-named respondent.
   If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.
   We are returning the EEOC files pertaining to your case to the District Office of the EEOC, located at the following address: Equal Employment Opportunity Commission, John F. Kennedy Federal Building, Government Center, Rm. 475, Boston, MA 02203-0506.
   This notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

R. Alexander Acosta
Assistant Attorney General
Civil Rights Division

By:  William B. Fenton
Deputy Chief
Employment Litigation Section

cc: Rory McCormick, Esq.
    City of Yonkers

    District Office EEOC